## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**AARON FRANCOIS**                       **CIVIL ACTION NO. 16-0348**
        **LA. DOC #603619**
**VS.**                                   **SECTION P**

                                        **DISTRICT JUDGE**

**DARRELL VANNOY**                **MAGISTRATE PATRICK J. HANNA**

### REPORT AND RECOMMENDATION

Pro se petitioner Aaron Francois, an inmate in the custody of Louisiana's Department of Corrections, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 on March 14, 2016. Petitioner attacks his 2012 conviction for second degree murder and the life sentence imposed thereon by the Fifteenth Judicial District Court, Lafayette Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### Statement of the Case

On February 23, 2009, a grand jury indicted the petitioner on charges of first degree murder and armed robbery, violations of La. R.S. 14:30 and 14:64. [Rec. Doc. 11, p.11] Trial was severed from the co-defendant on November 9, 2009. *Id.* On the State's motion, the trial court amended the indictment on January 20, 2011, to second degree murder, a violation of La. R.S. 14:30:1(a)(2) and armed robbery. *Id.* On August 15, 2012, petitioner was convicted of armed robbery and second-degree felony murder and on September 13,

2012, was sentenced to life without parole on the felony murder charge. *Id.* at 12. He appealed his conviction and sentence, arguing that the evidence failed to establish that the murder and the underlying felony of armed robbery formed part of a continuous transaction without a significant break in the chain of events. The Third Circuit Court of Appeals affirmed the conviction on the second-degree murder charge and life sentence on June 5, 2013.[1] *State of Louisiana v. Aaron Francois*, 114 So.3d 678 (La. App. 3 Cir. 6/5/13), 12-1438.

On some unspecified date, petitioner applied for writs of certiorari in the Louisiana Supreme Court. On January 27, 2014, his writ application was denied without comments. *State of Louisiana v. Aaron Francois*, 2013-KO-1605 (La. 01/27/14), 130 So.3d 958. He did not apply for certiorari in the United States Supreme Court. [Doc. 1, ¶9(h)]

On or about November 3, 2014, he filed an application for post-conviction relief in the Fifteenth Judicial District Court, raising the following claims: (1) Petitioner's Fifth, Sixth and Fourteenth Amendment rights were violated when he was denied his right to testify; (2) ineffective assistance of trial counsel due to counsel not allowing him to testify in his own defense at trial; and (3) indigent petitioner was denied his constitutional rights to appellate

---

[1] The appellate court found one error patent regarding the conviction. A review of the trial court record revealed that at the close of trial, the judge indicated that in light of the jury's finding that the second degree murder conviction was based on felony murder, she would not impose a sentence for the armed robbery conviction to avoid a double jeopardy violation. Finding that there was a double jeopardy violation as error patent, the appellate court set aside the conviction for armed robbery because "[t]he remedy for double jeopardy violation for multiple punishments for the same offense is to vacate the *conviction* and *sentence* for the less severely punishable offense[.]" *State v. Francois*, 114 So.3d 678, 681 (La. App. 3 Cir. 6/5/13), 2012-1438 (internal citations omitted). Accordingly, the appellate court vacated the defendant's conviction for armed robbery.

review and to any free copy(s) of the records to have an adequate opportunity to fairly present his constitutional claims on post conviction relief. [Rec. Doc. 11, pp. 6-27] Petitioner raised the following claims, "from his lay memory," in connection with Claim 3: "(1) Trial counsel was ineffective when he failed to object to the state where it was required to prove beyond a reasonable doubt that he petitioner had the specific intent to kill or to commit serious bodily injury. Petitioner did not have the requisite specific intent to be convicted of second degree murder in violation of his constitutional Sixth Amendment right; (2) Trial counsel was ineffective when he failed to object to the jury selection voir dire by the state without given racial neutral reason for exclusion of black jurors in violation of his constitutional sixth amendment right; and (3) Petitioner is of the opinion as far as he can remember is that other crucial ineffective assistance of counsel errors were made by his counsel but that he needs a refreshing memory of the requested documents records in order to sufficient and adequately fairly present those claims before the Court that violated his Louisiana and United States Constitutional rights to a fair trial." [*Id.* at 20] On or about November 18, 2014, his application was denied. [Rec. Doc. 1, ¶11;Rec. Doc. 11, pp. 2-3] The trial court did order the Clerk of Court to provide petitioner with a copy of the Indictment/Bill of Information and his sentencing minutes, free of charge. *Id.*

On or about December 12, 2014, Petitioner sought writs in the Third Circuit Court of Appeal, Docket Number 01305-KH, raising the same issues raised in his application for post conviction relief. [Rec. Doc. 12, pp. 10-45] On April 27, 2015, the Third Circuit denied

petitioner's writ, finding there was "no error in the trial court's November 18, 2014 ruling which denied Relator's November 2014 application for post-conviction relief." [Rec. Doc. 12, p. 3]

On or about May 18, 2015, petitioner sought writs in the Louisiana Supreme Court, Docket Number 15-KH-1005, raising the same issues enumerated above. [Rec. Doc. 13, pp. 2-17]  On February 19, 2016, the Louisiana Supreme Court denied writs holding that petitioner failed to show he received ineffective assistance of counsel and, as to his remaining claims, that he failed to satisfy his post-conviction burden of proof. [Rec. Doc. 12, pp. 4-5]

Petitioner filed the instant petition on March 14, 2016.  Here he claims:

(1) The evidence failed to establish that the murder and the underlying felony of armed robbery formed part of a continuous transaction without a significant break in the chain of events;

(2) Denial of his constitutional right to testify;

(3) Trial counsel rendered ineffective assistance of counsel by not allowing petitioner to testify in his own defense at trial;

(4)  Denial of his constitutional right to appellate review and to free copy of the records to have the opportunity to fairly present the following constitutional claims:

(a) Trial counsel was ineffective when he failed to object to the state where it was required to prove beyond a reasonable doubt that he petitioner had the specific intent to kill or to commit serious bodily injury.  Petitioner did not have the requisite specific intent to be convicted of second degree murder in violation of his constitutional Sixth Amendment right;

4

(b) Trial counsel was ineffective when he failed to object to the jury selection voir dire by the state without given racial neutral reason for exclusion of black jurors in violation of his constitutional sixth amendment right; and

(c) Petitioner is of the opinion as far as he can remember is that other crucial ineffective assistance of counsel errors were made by his counsel but that he needs a refreshing memory of the requested documents records in order to sufficient and adequately fairly present those claims before the Court that violated his Louisiana and United States Constitutional rights to a fair trial.

[Doc. 1-1]

## Law and Analysis

### I.  Standard of Review - 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs habeas corpus relief. The AEDPA limits how a federal court may consider habeas claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]"   *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or

5

if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5 Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from . .. [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## II.    Timeliness

The petitioner's conviction became final on April 27, 2014, when his time for seeking review in the United States Supreme Court on direct appeal expired.  Thus 190 days accrued toward his one year limit before he filed his application for post-conviction relief on November 3, 2014.

Under § 2244(d), only "properly filed" applications for post-conviction relief or other state collateral review can toll the one year limitation. "An application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (emphasis in original).

6

On November 3, 2014, Petitioner filed a pro se application for post-conviction relief in the trial court, which was denied on November 18, 2014.

The issue of sufficiency of the evidence was raised on direct appeal.  The Third Circuit affirmed the sentence and conviction on June 5, 2013, and the Louisiana Supreme Court on January 27, 2014. The remaining issues were raised in post-conviction filings. Petitioner's claims for post-conviction relief were adjudicated through the state district and appellate court system until the Louisiana Supreme Court's denial of writs on February 19, 2016.   Petitioner filed the instant petition on March 14, 2016.

Thus, as 214 days accrued against § 2244(d)'s one year limit, this matter is timely.

### III.    Petitioner's Claims

#### A.    The evidence failed to establish that the murder and the underlying felony of armed robbery formed part of a continuous transaction without a significant break in the chain of events.

According to the recitation of the facts of this matter as outlined by the Third Circuit on direct appeal, petitioner and a co-defendant, Kevin Gildhouse, devised a plan to commit a robbery because they needed gas money.  Petitioner suggested they rob a pizza delivery man or a cab driver, and Gildhouse told him to make the call.  (However, the petitioner also said at one point the robbery was Gildhouse's idea.)

As the pair set out, Gildhouse was armed with a Taurus .357 handgun they had stolen from the petitioner's cousin, and the petitioner was armed with a Taurus .38 Special a friend had given him.  The men went to Wal-Mart and purchased cigarettes and stole gloves to

prevent leaving fingerprints in the planned robbery. Using a pay phone, the petitioner called a cab company and asked for a pickup at Gloria's, a nearby bar. The petitioner allegedly told Gildhouse he had done his part. He said although he intended to commit the armed robbery, he had no intent to shoot anyone.

The cab company dispatched Wallace Badeaux to pick up petitioner and Gildhouse at Gloria's. When Mr. Badeaux stopped the cab in the parking lot, the petitioner and Gildhouse pulled their weapons on Mr. Badeaux, and the petitioner told him to give them his money. Mr. Badeaux gave them about $35, and they retrieved more money from the cab's visor, for a total of about $100. Mr. Badeaux asked them not to shoot him and told them he had a child. Gildhouse handed the money to the petitioner, who put it in his pocket. The petitioner then took the key to the vehicle from Mr. Badeaux, who started to cry. The petitioner then put his gun in the waistband of his pants and before he knew what was happening, Gildhouse got out of the cab and shot Mr. Badeaux in the head.

The petitioner and Gildhouse ran from the cab and eventually made their way back to their vehicle, which was parked at Gloria's. Along the way, the petitioner threw the cab's key into a field. The petitioner said he was simply in the wrong place at the wrong time, and there was nothing he could do to prevent the murder. He told law enforcement "that man did not need to be shot at all."

About a week later, Gildhouse and his girlfriend threw the murder weapon, the .357, into a coulee by the petitioner's apartment. Sergeant Guy Vizena of the Lafayette Parish

Sheriff's Office testified he recovered the .357 from a canal on Cameron Street. Police recovered the cab's key in the field exactly where the petitioner told them it would be.

Sergeant Larry Brown of the Lafayette Parish Sheriff's Office testified at trial that the petitioner and Gildhouse were identified by a tip from the public. The department's Special Reaction Team (SRT) was called to apprehend the suspects at the petitioner's apartment. They recovered a Taurus .38 Special and six .38 Special bullets from Gildhouse during the subsequent search.

Dr. Joel Carney, stipulated to be an expert in forensic pathology, testified at trial that Mr. Badeaux died from a gunshot wound to the neck. The entrance wound was on the back left side of Mr. Badeaux's neck.

Christopher Harold Henderson testified as a forensic chemist with the Acadiana Crime Lab. Forensic testimony showed the bullet was fired from the Taurus .357 Magnum revolver. DNA analysis showed the presence of the petitioner's DNA on a left-handed glove, and the petitioner could not be excluded as the contributor of DNA found on a jacket recovered as evidence.

Petitioner argues in the petition before this Court that the evidence presented at trial failed to establish that the murder and underlying felony of armed robbery formed part of a continuous transaction without a significant break in the chain of events. He argues that his act of obtaining the cab's ignition key indicates he intended to flee without inflicting further harm to Mr. Badeaux when Gildhouse shot and killed him. The petitioner did not testify to

9

this intention at trial, or at any other time in the trial court.

*Jackson v. Virginia*, 443 U.S. 307 (1979), provides the appropriate United States Supreme Court standard for consideration of a claim of insufficient evidence.   Under *Jackson*, a federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.  *Id.* at 319; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008).   Thus, to determine whether the commission of a crime is adequately supported by the record, the Court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U. S. at 324 n. 16).

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at the trial") (quoting *Jackson*, 443 U.S. at 324).   Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (*citing United States v. Garcia,* 995

10

F.2d 556, 561 (5th Cir. 1993)); see *Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").   All credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (*quoting Herrera v. Collins*, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact.   *Perez*, 529 F.3d at 594; *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995). Therefore, this Court must examine whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

Petitioner was convicted of second degree felony murder.   Murder occurs during the commission of an enumerated felony when "the murder and the felony form a continuous transaction without a significant break of events." *State v. Ramsdell*, 09–1510, p. 9 (La.App.

11

3 Cir. 10/6/10), 47 So.3d 78, 84 (*citing State v. Goodley*, 01–77 (La.6/21/02), 820 So.2d 478).

The appellate court compared the petitioner in this matter to the defendant in *State v. Cooper*, 03–161 (La.App. 3 Cir. 12/23/03), 862 So.2d 512, writ denied, 04–236 (La.6/4/04), 876 So.2d 74, who was with the man who actually shot and killed a victim during an armed robbery in which they both participated. The defendant went to the scene with the shooter, did nothing to prevent the shooting, did not act surprised by the shooting, jumped into the victim's vehicle with the shooter, returned to the shooter's house with the still-living victim in the vehicle, and accompanied the shooter to a remote location to dispose of the vehicle and the victim. The court affirmed the defendant's conviction as a principal to second degree murder because the defendant was a participant in the armed robbery in which the victim was killed.

Similarly, in *State v. George,* 39,772 (La.App. 2 Cir. 7/1/05), 908 So.2d 79, the defendant attempted to forcibly rape a woman before putting her in the trunk of her vehicle and driving away. The victim was able to open the trunk, but she fell from the vehicle and died from injuries sustained hitting the roadway. The defendant claimed the victim's death and the attempted rape were too far apart in time to constitute a continuous transaction. The second circuit found it significant that the defendant never left the victim during the chain of events that culminated in her death. It affirmed the defendant's conviction for second

degree murder.

Here, the petitioner argued on appeal that he took the cab's ignition key from Mr. Badeaux prior to the shooting because, "[a]rguably[,] this would have prevented the victim from driving away and notifying the police before the defendant could get away." However, the appellate court held that he failed to present any evidence from the record to suggest this is why he took the keys to the cab. He did nothing to try to prevent the murder, and he ran from the scene without attempting to obtain help for the victim. Throughout petitioner's interview at the time of his arrest, he told of taking the key to the cab and throwing it in a field. He never mentioned any reason for taking the key.

Therefore, the appellate court upheld the jury's finding that the evidence showed that the petitioner actively planned and participated in an armed robbery that resulted in the murder of the victim. Mr. Badeaux was murdered within seconds of the armed robbery. The petitioner was sitting in the back seat of the vehicle when the fatal shot was fired. He ran from the scene, disposed of the key, and never reported the crime to the authorities. He initially denied any involvement in the crime, claiming he was "clueless" about why he was being questioned.

A rational trier of fact, after viewing this evidence in the light most favorable to the prosecution, could easily have found that petitioner was the perpetrator of the armed robbery that formed part of a continuous transaction with no significant break in the chain of events,

even though the petitioner himself may not have been the shooter.  The jury was well within its authority to make credibility determinations as to the testimony of the witnesses.  It is not for this Court, on federal habeas review, to reevaluate the credibility of witness statements or the weight of the evidence or to substitute its own judgment for the trier of fact, whose fact-finding must be given deference. Considering the evidence in the light most favorable to the prosecution, it was rational and reasonable for the jury to have found that all essential elements of felony murder were proven beyond a reasonable doubt.  Petitioner is not entitled to relief on this claim.

**B.      Petitioner was denied his constitutional right to testify on his own behalf.**

As argued by the State, petitioner's claim that counsel prevented him from testifying is conclusory, unsupported and fails to demonstrate that his counsel actually prevented him from doing so.

It is well settled that a criminal defendant has the right to testify on his own behalf pursuant to the Fifth, Sixth and Fourteenth Amendments. *Rock v. Arkansas*, 483 U.S. 44, 49, (1987); *Bower v. Quarterman*, 497 F.3d 459, 473 (5th Cir. 2007); *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001); *Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir. 1994). When, as here, the petitioner alleges that his counsel, not the court or the State, prevented him from testifying, the Fifth Circuit has held that the "'appropriate vehicle for such claims is a claim of ineffective assistance of counsel.'"  *Sayre*, 238 F.3d at 634 (*quoting United States v.*

14

*Brown*, 217 F.3d 247, 258-59 (5th Cir. 2000)).

A criminal defendant may waive his right to testify if that waiver is knowing, intelligent and voluntary. *Bower*, 497 F.3d at 473 (*citing Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997)). A violation of this right occurs only if the "'final decision that [the defendant] would not testify was made against his will.'" *Emery*, 139 F.3d at 198 (*quoting United States v. Teague*, 908 F.2d 752, 759 (11th Cir. 1990)).

A habeas petitioner has the burden of proving that he was denied this constitutional right. "[A] petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand." *Turcios v. Dretke*, No. H-97-0515, 2005 U.S. Dist. LEXIS 34938, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005) (*citing Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991)); *accord Jones v. Cain*, No. 10-213, 2010 U.S. Dist. LEXIS 133831, 2010 WL 5375949, at *3 (E.D. La. Dec. 17, 2010) (Vance, J.); *Davis v. Quarterman*, No. H-06-3606, 2007 U.S. Dist. LEXIS 47271, 2007 WL 1886272, at *6 (S.D. Tex. June 29, 2007).   The *Underwood* court specifically identified various problems that are bound to arise if habeas petitioners, making similar arguments, are not required to satisfy the required burden of proof.  *Underwood*, 939 F.2d at 475-76.  Adopting the reasoning in *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987), the *Underwood* court recognized that such an assertion, even if made under oath,

15

is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary — and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify — to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

*Underwood*, 939 F.2d at 475-76; *accord Gross v. Knight*, 560 F.3d 668, 672 (7th Cir.), *cert.*

*denied*, 558 U.S. 950 (2009).

Citing *Underwood*, the Fifth Circuit has observed

that allowing a bare assertion of a right-to-testify violation to precipitate the further investment of judicial resources is problematic. See [*Underwood*, 939 F.2d at 476] . . . (stating that a conclusory assertion by a defendant that his right to testify was denied him is insufficient to require a hearing because "[i]t just is too facile a tactic to be allowed to succeed"). We agree that there is "a grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right . . . to testify in his own behalf without rendering the criminal process unworkable."

*United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999) (*quoting Underwood*, 939 F.2d

at 475). "While the Fifth Circuit has adopted the general rule of law enunciated in

*Underwood* . . . , the Court has further opined that [summary] dismissal is inappropriate

unless the habeas petitioner has first been afforded the opportunity to amend his pleadings

to provide the evidence necessary to support his claim." *Savoy v. Cain*, No. 06-1744, 2008

U.S. Dist. LEXIS 6475, 2008 WL 276542, at *1 (W.D. La. Jan. 29, 2008) (*citing Martinez*,

181 F.3d at 629); but see, *Silva-Garcia v. United States*, No. 10-cr-2224, 2012 U.S. Dist.

16

LEXIS 160132, 2012 WL 5464639, at *4 (S.D. Tex. Nov. 8, 2012) (finding that the Fifth Circuit has not created a right to supplement a bare allegation of right-to-testify).

Of course, under current United States Supreme Court precedent, a federal habeas court is limited to consideration of the evidence and the record that were before the state courts that reviewed the merits of the claim at issue. *Cullen v. Pinnholster*, 563 U.S.170, 180-181  (2011); *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011); *Gallow v. Cooper*, 505 F. App'x 285, 295-96 (5th Cir. 2012); *Thomas v. Thaler*, 520 Fed. Appx. 276, 2013 WL 1297269, at *4-*5 (5th Cir. 2013).  Petitioner provided no evidence or arguments to the state courts other than those already before this Court, and no evidence should be considered for the first time on federal habeas review.

Petitioner asserts a claim for ineffective assistance of counsel, alleging that his trial counsel denied him the right to testify on his own behalf.  [Rec. Doc. 1-1, p. 12] He asserts that he repeatedly told trial counsel that he wanted to testify on his own behalf, yet counsel told him that he did not feel he needed to testify because the state had the burden of proving second degree murder and that he (counsel) was the one who made that ultimate determination as to whether he would testify or not.  *Id.*

The record reflects that during the trial the petitioner was questioned by the trial court, at the request of his counsel, regarding his desire to testify.  The petitioner's counsel stated on the record that he and the petitioner had discussed the matter and that the petitioner agreed

17

that he would not testify.  Considering this information, the district court thereafter explained to the petitioner his rights under the Fifth Amendment as well as his right to testify if he chose to do so. The petitioner elected not to testify.

The record is clear on these facts and the petitioner's own refusal to testify. Specifically, the trial transcript reflects:

| | |
|---|---|
| Mr. McCann: | Judge, I want the record to reflect that I have discussed the possibility of testifying with my client, I've discussed the pro's and con's of that, I have discussed and told him very clearly that he has the right to testify but does not have to testify, that the Court – the jury should not hold it against him, and that the Court will instruct the jury in such a manner.  He has agreed with me that he's not going to testify, but I need him to understand, on the record, and to state, on the record, that all of those rights have been re-explained to him and that he, in fact, does agree with me, for strategy purposes, that he will not be taking the witness stand. |
| The Court: | All right. And, Mr. Francois, you've heard what your attorney just said. |
| Aaron Francois: | Yes, ma'am. |
| The Court: | And we talked about it at length when we were going through voir dire. And the jury will be instructed that they cannot draw any inferences from the fact that you choose not to testify if that's what you do. |
| Aaron Francois: | Yes, ma'am. |

| | |
|---|---|
| The Court: | Whether to testify or not is a strategy issue that – You know, an attorney advice is important, but, ultimately, as Mr. McCann said, the decision is yours. And so, if it is your decision not to testify, then Mr. McCann is going to honor that. If it's your decision that you want to testify, he would honor that, as well. You understand? |
| Aaron Francois: | Yes, ma'am. |
| The Court: | And what is your decision? |
| Aaron Francois: | I'm going to go with his decision. |
| The Court: | Okay. So you're not going to testify? |
| Aaron Francois: | No, ma'am. |

[Rec. Doc. 21-10, pp. 43-44.]

The petitioner's claim that he was denied the right to testify on his own behalf is without merit and should be denied. The trial records reflect the petitioner was informed of his rights and made the decision on his own to waive his right to testify. *Id.* This testimony of the petitioner, indicating his own decision not to testify, was taken immediately before the defense rested. The petitioner's argument herein that he insisted on his want to testify and his attorney's refusal to allow the same is disingenuous. The record reflects that the petitioner knowingly waived his right.

**C.    Trial counsel rendered ineffective assistance of counsel by not allowing petitioner to testify on his own behalf.**

Petitioner asserts that he received ineffective assistance of counsel from trial counsel,

who he claims did not allow him to testify on his own behalf at trial.

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984) provided for a two-prong analysis. First, a defendant must show that counsel's performance was deficient. Counsel's performance is deficient if it falls below an objective standard of reasonableness. A court of appeals review of counsel's performance is highly deferential, with a strong presumption that the performance was reasonable. Deficient performance is prejudicial only upon a showing that "but for" counsel's errors, there is a reasonable probability that the ultimate result would have been different and that confidence in the reliability of the verdict is undermined. *United States v. Faubion*, 19 F.3d 226 (5th Cir. 1994). To prove counsel's performance was deficient requires a showing that counsel made errors so serious that the Defendant was effectively denied the right to counsel as guaranteed by the sixth Amendment. *State v. Moody*, 2000-0886 (La. App. 1st Cir. 12/22/00), 779 So.2d 4 *citing State v. Serigny*, 610 so.2d 857 (La. App. 1st Cir. 1992), writ denied, 614 SO.2d 1263 (La. 1993).

Under our adversary system, once a defendant has the assistance of counsel, the vast array of trail decisions, strategic and tactical, which must be made before and during the trial rests with the accused and his attorney. *State v. Felde¸* 422 So.2d 370, 393 (La. 1982), *cert. denied*, 461 U.S. 918 (1983). The decision to call or not to call a particular witness is a matter of trial strategy and not, per se, evidence of ineffective counsel. *State v. Folse*, 623

So.2d 59.

The fact that a particular strategy is unsuccessful does not establish ineffective assistance of counsel. *State v. Felde, supra*. And as opinions may vary on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful. *State v. Brooks*, 505 So.2d 714 (La. 1987), *cert denied, Brooks v. Louisiana*, 484 U.S. 947 (1987). In this matter, the petitioner cannot say that "but for" counsel's errors, if any, the end result would have been different.

While asserting that at multiple times during his trial he insisted to his counsel that he wanted to testify on his own behalf, petitioner fails to cite to any evidence or information to support his claims. What the evidence does reflect is that after specific instruction by the trial court, with particular reference to the right to testify and the decision on the right to testify, the petitioner waived his right. The trial records reflect the petitioner was informed of his rights and made the decision on his own to waive his right to testify. This testimony of the petitioner, indicating his own decision not to testify, was taken immediately before the defense rested. The record reflects that the petitioner knowingly waived his right at the conclusion of, but before, the close of his case at trial.

The petitioner's claims fail to meet the *Strickland* burden and do not support the argument that he wanted to assert his right to testify.

**D.**    **Indigent petitioner was denied his constitutional rights to appellate renew and to any free copies of the records to have an adequate opportunity to fairly present his constitutional claims on post-conviction relief.**

Finally, petitioner asserts that he was denied the right to receive a free copy of the trial court record, thereby preventing him from fully developing his post-conviction relief claims in violation of the right to appellate review.  He enumerates several claims from his "lay memory as far as he can remember" [Rec. Doc. 1-1, p. 14], specifically: "(1) Trial counsel was ineffective when he failed to object to the state where it was required to prove beyond a reasonable doubt that he petitioner had the specific intent to kill or to commit serious bodily injury.  Petitioner did not have the requisite specific intent to be convicted of second degree murder in violation of his constitutional Sixth Amendment right; (2) Trial counsel was ineffective when he failed to object to the jury selection voir dire by the state without given racial neutral reason for exclusion of black jurors in violation of his constitutional sixth amendment right; and (3) Petitioner is of the opinion as far as he can remember is that other crucial ineffective assistance of counsel errors were made by his counsel but that he needs a refreshing memory of the requested documents records in order to sufficient and adequately fairly present those claims before the Court that violated his Louisiana and United States Constitutional rights to a fair trial."

To the extent he may argue that the trial court erred in denying his request for free transcripts under Louisiana law, the claim plainly fails. The state court's interpretation and

22

application of its own laws is a matter of state concern only. "[I]t is not the province of a federal habeas court to reexamine state-court determination on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Additionally, there is no constitutional mandate that petitioner must be afforded a free copy of his state-court criminal record for purposes of post-conviction proceedings. *Smith v. Beto*, 472 F.2d 164 (5th Cir. 1973); *see also Cook v. Cain*, 2015 U.S. Dist. LEXIS 148822, 2015 WL 6702290, at *2 (E.D. La. 2015) (*citing United States v. MacCollom*, 426 U.S. 317, 323-24 (1978)). The right to free transcripts is not absolute; it requires a showing of particularized need. *Smith v. Beto,* 472 F.2d at 165. A post-appeal indigent defendant is not entitled to a free transcript "if he had access to the record on direct appeal and fails to demonstrate that he requires the record to establish a non-frivolous post-conviction claim." *Id.* at 165; see *also Yates v. Collins*, 92-2335, 988 F.2d 1210 [published in full-text format at 1993 U.S. App. LEXIS 38640], 1993 WL 82111, at *1 (5th Cir. 1993).

The petitioner appealed his conviction and sentence. *See State of Louisiana v. Aaron Francois*, 12- 1438 (La. App. 3rd Cir. 06/05/2013); 114 So.3d 678. Thereafter, the petitioner applied for writs of certiorari with the Louisiana Supreme Court and his writ application was denied without comments on January 27, 2013. *See State of Louisiana v. Aaron Francois*,

23

2013-KO-1605 (La. 01/27/14); 130 So.3d 958.  In his appeal to the Third Circuit Court of Appeal, the petitioner was represented by the Louisiana Appellate Project, particularly Edward J. Marquet. Mr. Marquet presumably reviewed the appeal record and presented an appeal to the Third Circuit based upon the record.  The appellate court reviewed the record for errors patent on the face of the record pursuant to Article 920 of the Code of Criminal Procedure. After reviewing the record, the court found only one error patent, an error with the court minutes of sentencing. [Rec. Doc. 21-11, p. 24]

As the district court directed the petitioner in the ruling on the Petitioner's Petition for Post-Conviction Relief, the petitioner is entitled to a copy of the Indictment/Bill of Information and sentencing minutes free of charge. [Rec. Doc. 21-11, p. 49]  The Clerk of Court was ordered to provide the same. *Id.*

Contrary to the petitioner's beliefs, there is no independent right to have a copy of, or duty of the district court to provide a copy of, the record to the petitioner. In order to receive any additional documents in the record, the petitioner must make a showing of a particularized need in order to obtain further records free of charge. An inmate cannot make a showing of a particularized need absent a properly filed application for post-conviction relief which sets out specific claims of constitutional errors requiring the requested documentation for support. The state is not required to fund the inmate's efforts to overturn his conviction and sentence by providing him generally with documents "to comb the record

24

for errors." *State ex rel. Peyton v. Theil*, 315 So.2d 40 (La. 1975). The petitioner has failed to meet the burden necessary to justify a free copy of the record.

All these things considered, the allegations that the petitioner makes in support of his claim of denial of appellate review and process are unsupported, contrary to the evidence, and without merit.  Accordingly, federal *habeas* relief is not warranted with respect to this claim.

## Conclusion and Recommendation

For the foregoing reasons,

**IT IS RECOMMENDED THAT** the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual**

findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

In Chambers, Lafayette, Louisiana October 5, 2017

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE